UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DARLENE MORRIS as Conservator for MATTHEW MORRIS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:15-cv-00239 ) Judge Sharp/Brown ) |
| GENERAL MOTORS, LLC; ALEXANDER CHEVROLET-CADILLAC, LLC; ALEXANDER CHEVROLET, LLC, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM

This action, which arose out of an automobile accident, was originally filed in the Circuit Court for Davidson County, Tennessee, and was removed to this Court. Plaintiff Darlene Morris has filed a Motion to Remand the action to state court (Docket No. 7), to which Defendants have responded in opposition (Docket Nos. 11, 12). For the reasons set forth below, the Court grants Plaintiff's Motion to Remand.

### I. Factual and Procedural Background

According to the allegations in the Complaint, Plaintiff's son Matthew Morris was incapacitated in an automobile collision in May 2014. The collision occurred when Mr. Morris's 2009 Chevrolet Impala ("the Impala") became uncontrollable and crossed the southbound lane of travel. Mr. Morris's vehicle collided with another vehicle and his airbag failed to deploy. Plaintiff filed suit as her son's conservator against General Motors, LLC ("GM"), Alexander Chevrolet-Cadillac, LLC ("ACC"), and Alexander Chevrolet, LLC (collectively "the Defendants"). GM, a Delaware Corporation with its principal place of business in Detroit,

1

Michigan, manufactured the Impala. ACC, a Tennessee LLC that ceased doing business in 2011, "sold the vehicle that is referenced in Plaintiff's Complaint as a used vehicle." (Docket No. 10 at ¶ 5). The other local Defendant, Alexander Chevrolet, LLC, "denies that it sold and/or placed [the Impala] into the stream of commerce." (Docket No. 9 at ¶ 5). Plaintiff brings three claims: 1) strict liability in tort; 2) negligence; and 3) breach of warranty.

Soon after Plaintiff initiated this litigation, GM removed the case to this Court, arguing that Defendants ACC and Alexander Chevrolet (collectively "the Alexander Defendants") were fraudulently joined. (Docket No. 1). Without the Alexander Defendants, Defendants argue, complete diversity exists and this Court has subject matter jurisdiction. Plaintiff moved to remand the case less than thirty days later, arguing that all Defendants were properly joined, thereby defeating diversity and eliminating the Court's subject matter jurisdiction. The Alexander Defendants subsequently consented to GM's removal, albeit outside the 30-day window required by 28 U.S. Code § 1446(b).

## II. Legal Standard

Fraudulent joinder arises "when the non-removing party joins a party against whom there is no colorable cause of action." Saginaw Housing Comm'n v. Bannum, Inc., 576 F.3d 620, 624 (6th Cir. 2009); Probus v. Charter Communications, LLC, 234 Fed. App'x. 404, 406 (6th Cir. 2007) ("In order to determine whether a non-diverse defendant was fraudulently joined, we ask whether the plaintiff had a colorable basis for her claims against that defendant."). In determining whether a colorable claim exists, a court looks to state law. See Jerome–Duncan, Inc. v. Auto-by-Tel, LLC, 176 F.3d 904, 907 (6th Cir. 1999); Boladian v. UMG Recordings, Inc., 123 Fed. App'x. 165, 167 (6th Cir. 2005) ("To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against

2

non-diverse defendants under state law."). Under state law, the removing party must demonstrate "the *absence of any possibility*" the non-diverse plaintiff could state a claim against the defendant. Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003) (emphasis in original); see also Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994) ("There can be no fraudulent joinder unless it be clear that *there can be no recovery under the law of the state* on the cause alleged or on the facts in view of the law.") (citation omitted) (emphasis added).

Thus, the courts look to the relevant state law pleading standard to determine whether the allegedly non-diverse plaintiff has any possibility of stating a claim against the defendant. Tennessee has expressly opted to retain the notice pleading standard rather than adopt the Supreme Court's current iteration of Rule 8 of the Federal Rules of Civil Procedure. See Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 430 (Tenn. 2011) ("We decline to adopt the new plausibility standard and adhere, for the following reasons, to the notice pleading standard and the principles . . . that have long governed Tennessee pleading practice."). The "primary purpose" of the pleadings, according to Tennessee law, "is to provide notice of the issues presented to the opposing party and court." Id. at 426.

Moreover, the fraudulent joinder standard is "'even more favorable' to plaintiffs than the standard for ruling on a motion to dismiss." Wolf v. Bankers Life & Cas. Co., 519 F. Supp. 2d 674, 683 (W.D. Mich. 2007) (citations omitted). "[T]he removing party bears the burden of demonstrating federal jurisdiction, and all doubts should be resolved against removal." Copper Basin Fed. Credit Union v. Fiserv Sol., Inc., No. 1:11-CV-203, 2011 WL 4860043, at *2 (E.D. Tenn. Oct. 13, 2011) (quoting Harnden v. Jayco, Inc., 496 F.3d 579, 581 (6th Cir. 2007)). The removing party must also obtain unanimous consent of all defendants to the notice of removal.

Failure to do within thirty days constitutes a defect in the removal procedure. Loftis v. United Parcel Serv., Inc., 342 F.3d 509, 516 (6th Cir. 2003).

The question before the Court, then, is whether Defendants have successfully proven that Plaintiff has no colorable claim against the Alexander Defendants under Tennessee law. If they have not shouldered this burden then the case must be remanded.

### III. Application of Legal Standard

Defendants assert that Plaintiffs have no colorable claim against the Alexander Defendants because of the Tennessee seller's immunity law. The seller's immunity law, codified at Tenn. Code Ann. § 29-28-106, precludes product liability actions against sellers except in certain circumstances, none of which apply here. Plaintiff argues that her claims against the Anderson Defendants are not product liability claims, but rather claims for negligent inspection of the Impala. Defendants deflect this argument, saying that "Plaintiff's claims against the Alexander Defendants for negligent inspection obviously arise out of the use of a product. Consequently, this action is a product liability action." Alternatively, Defendants argue that there is no common law duty to inspect for latent defects that could not be discovered during a reasonable inspection.

As a preliminary matter, the Court rejects Defendants' attempt to repackage Plaintiff's negligence claim as a product liability claim simply because the claim is related to something that could be construed as a product. To hold that all claims arising from the use of a product constitute product liability actions would essentially nullify a robust body of negligence law. That proposition aside, Defendants are correct that generally speaking, Tennessee common law does not impose on automobile sellers the duty to inspect vehicles for latent defects. This case is, however, distinct from the general rule in that the Impala at issue was a used car. The Court

is unable to find a Tennessee case that specifically addresses the existence of a duty to inspect used cars. Many other jurisdictions have, however, found that "[a] seller of a used or secondhand product—especially, but not exclusively, a motor vehicle—has often been held to have a duty to test or inspect it, and to be liable for injuries resulting from the omission of proper tests or inspections." E.L. Kellet, Annotation, *Seller's Duty to Test or Inspect as Affecting His Liability for Product-Caused Injury*, 6 A.L.R. 3d 12 §10 (Originally published in 1966 and supplemented weekly) (collecting cases). A duty to inspect may also arise when the seller has performed repairs on the vehicle before the sale or made specific representations about the vehicle. Id. Moreover, Plaintiff has also alleged that the Alexander Defendants actually undertook to inspect the vehicle, regardless of whether some duty required them to do so. If some inspection did occur, Plaintiff is correct that "[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully.'" Biscan v. Brown, 160 S.W.3d 462, 482–83 (Tenn. 2005) (quoting Stewart v. State, 33 S.W.3d 785, 793 (Tenn. 2000)).

Accordingly, based on the record now before the Court and drawing all doubts in Plaintiff's favor, it seems that she has at least a colorable negligence claim against the Alexander Defendants under Tennessee law. This claim precludes a finding of fraudulent joinder, which in turn defeats diversity in this action.

Plaintiff also notes that the removal here was procedurally defective insofar as GM failed to obtain consent from the other two Defendants within thirty days. Because the Court finds that diversity jurisdiction is lacking, thereby barring removal, it declines to address this procedural issue.

## IV. Conclusion

On the basis of the foregoing, the Court will enter an Order remanding this case to the Circuit Court of Davidson County.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE